UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MARK DI PASQUA,

                      Plaintiff,

       -against-

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
--------------------------------------------------------- x

<u>MEMORANDUM & ORDER</u>

11-CV-4056 (ENV)

VITALIANO, D.J.

        Plaintiff Mark Di Pasqua seeks review, pursuant to 42 U.S.C § 405(g), of the final decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for supplemental security income benefits ("SSI") under the Social Security Act ("Act"). The parties have filed cross-motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff argues that the administrative law judge ("ALJ") erred in failing to apply the appropriate legal standards, and that the decision was not supported by substantial evidence. The Commissioner counters that she correctly applied the relevant legal standards and that substantial evidence supports the decision that Di Pasqua does not qualify for SSI benefits. For the reasons set forth below, the Court denies the Commissioner's motion and grants Di Pasqua's motion to the extent that this case is remanded for further administrative proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the defendant in this action. The Clerk is directed to amend the caption to reflect this change.

1

## Background

1. Procedural History

On July 11, 2008, Di Pasqua filed an application for SSI benefits based on an accumulation of several impairments: manic depression, herniated discs, hepatitis B, and high blood pressure. (R. 12, 42, 98.)[2] The Social Security Administration ("SSA") denied the application on October 28, 2008. (R. 12.) On February 12, 2010, a hearing was held before ALJ Joseph K. Rowe. (R. 12.) Di Pasqua, who was and remains represented by counsel, appeared and testified. (R. 23-41.)

In a March 5, 2010 written decision, the ALJ denied Di Pasqua's claim, concluding that his discogenic, that is intervertebral disc, and degenerative back disorder, hepatitis B, and hypertension were severe impairments but that plaintiff was "capable of performing past relevant work as a building inspector" based on his residual functional capacity ("RFC"). (R. 9-17.) The ALJ rejected outright Di Pasqua's claim that he suffered from severe manic depression. (R. 14.) The decision of the ALJ became the final decision of the Commissioner on July 6, 2011, when the Appeals Council denied Di Pasqua's request for review. (R. 1-4.) Di Pasqua timely filed this action on August 22, 2011 to challenge the Commissioner's adverse determination.

2. Plaintiff's Medical History

Although the ALJ's decision denying Di Pasqua's claim discusses only the opinion of one treating physician and those of two consulting physicians, the administrative record reveals that Di Pasqua sought care from at least eight physicians between 2006 and 2009. (R. 100, 224.) Two physicians—Mikhail Bernshteyn, M.D. and Juan Olivera, M.D.—submitted

---

[2] Citations to the underlying administrative record are designated as "R."

2

reports regarding the impact of Di Pasqua's disability on his ability to function. (R. 173, 211.) Clinical notes and records from two others—Leonard Pace, M.D. and Antonio Parisi, M.D., who appear to have treated Di Pasqua—are in the record, though there is no evidence that any of them uttered an opinion as to Di Pasqua's RFC. (R. 155-62.) As for the remaining treating doctors identified by Di Pasqua after his initial benefit denial, to the extent that any provided any documentation regarding their examination and treatment of plaintiff, they are not reflected in the record.

Dr. Bernshteyn's examinations and treatment supplied the most robust evidence in support of Di Pasqua's claim. Citing magnetic resonance imaging ("MRI") studies, Dr. Bernshteyn completed a Social Security medical assessment on November 25, 2008, in which he diagnosed Di Pasqua with large herniated discs at L3-4 and L4-5 resulting in moderate to marked left and right foraminal stenosis, an impingement on the left L3 nerve root, and smaller herniated discs at L2-3 and L5-S1. (R. 169-70.) He further noted that Di Pasqua's medical conditions precluded him from working full time five days a week, regardless of whether the job required him to sit or stand. *Id.* Dr. Bernshteyn's subsequent report, a physical capacity evaluation dated June 25, 2009, echoed the first medical assessment he had completed in connection with plainiff's SSI application. (R. 211.) The assessment documented his medical opinion that Di Pasqua could not stand or sit for more than two hours a day, and could not lift more than six pounds. *Id.* Finally, Dr. Bernshteyn submitted a medical source statement regarding plaintiff's ability to do physical work-related activities.[3] (R. 217-18.) Dated December 16, 2009, this report opined that Di Pasqua could sit or stand for no more than one hour at a time and could occasionally lift or carry up to ten pounds over the course of a workday. *Id.* Significantly, Dr.

---

[3] This medical source statement bears SSA document designation Form HA-1151-BK, and is sanctioned by SSA Office of Disability Adjudication and Review.

3

Bernshteyn specifically noted various limitations in plaintiff's ability to function, including limitations on the use of his hands and feet, his ability to climb stairs or ladders, and his ability to kneel or crouch. (R. 219-22.)

The findings and conclusions expressed by Dr. Bernshteyn are not those of a lone wolf. Di Pasqua's file contains submissions from three of the other seven physicians plaintiff listed on his disability report and benefit application. (R. 100, 224.) Dr. Olivera completed a one-page physician's employability report documenting that Di Pasqua had suffered a "breakdown." Dr. Olivera diagnosed plaintiff with manic depression, alcoholism, hepatitis C, and hypertension and noted that Di Pasqua's condition limited his ability to work.[4] (R. 173.) The form does not further elaborate the basis of his conclusion. *Id.* Another treating source, Dr. Parisi, wrote a letter, dated February 2006, diagnosing Di Pasqua with alcoholism, manic depression and dizzy spells, and concluded that Di Pasqua "needs psychiatric help for his manic depression and alcoholism."[5] (R. 162.) Dr. Parisi also submitted the results of an X-ray examination of Di Pasqua's abdomen, spine, pelvis and chest. His filing included several pages of clinical notes as well. (R. 157-61.) Completing the medical source submissions, the record contains an MRI report diagnosing herniated discs and varying levels of foraminal stenosis, sent to the attention of

---

[4] The Court acknowledges that the report is hard to read and that the date is unclear. But there is no prejudice to the Commissioner. If anything, the clarity issues are further reason for review, since "[w]here the medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation." *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975).

[5] Dr. Parisi does not appear to have specifically opined on Di Pasqua's RFC. Di Pasqua claims that he saw Dr. Parisi from 2006 through November 2007. (R. 101.) In light of Dr. Parisi's longstanding and continuous relationship with Di Pasqua, it appears that he, and doctors associated with him in practice, were Di Pasqua's treating physicians. Their medical opinions should be analyzed under the treating physician rule. *See* 20 C.F.R. § 404.1527(d)(2). It is further noted that the only medical records available at the hearing are from early 2006. On remand, in order to fully develop the record, the ALJ will need to attempt to locate the missing year and a half of medical records created by Dr. Parisi and his colleagues.

4

Dr. Pace on November 30, 2007. (R. 169-70.) The record contains no documents from Drs. Urman, Benantii, Cohen, or Chen, though they were listed by Di Pasqua as examining sources. (R. 224.)

A state agency consultative physician, Rahel Eyassu, M.D., examined Di Pasqua on October 20, 2008. (R. 194-8.) Dr. Eyassu determined that Di Pasqua's ability to lift was markedly limited, but that his ability to bend was only moderately limited. (R. 197.) He offered a prognosis for a fair outcome with pain management and physical therapy. *Id.* Based on Dr. Eyassu's examination, a capacity assessment form was completed by SSA, which reflected that Di Pasqua could occasionally lift 20 pounds, frequently lift ten pounds, and could sit, stand, or walk about six hours in an eight-hour work day. (R. 163-68.) Finally, Michael Alexander, Ph.D. performed a consultative psychiatric evaluation of Di Pasqua on September 25, 2008, upon which he concluded that Di Pasqua had no severe mental impairment. (R. 174.)

## Standard of Review

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse, or modify that decision, "with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g); *see Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). Yet, this power of review is not unbounded. When evaluating a determination by the Commissioner to deny a claimant disability benefits, the Court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g); *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir.1998)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (*quoting Richardson v. Perales*, 402 U.S.

5

389 (1971)).

Courts are advised to "keep[ ] in mind that it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). When evaluating the evidence, "the court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). Thus, if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Discussion

For the purpose of SSI benefits, a "disability" constitutes the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). Such impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382(a)(3)(B). In evaluating a disability claim, the ALJ must consider: (1) objective medical facts and clinical findings; (2) diagnosis and medical opinions of examining physicians; (3) subjective evidence of pain and disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience. *See Pabon v. Barnhart*, 273 F. Supp. 2d 506, 512 (S.D.N.Y. 2003).

SSA has promulgated administrative regulations for determining when a claimant meets this SSI definition of disability. First, SSA must consider if the claimant is currently engaged in substantial gainful employment. If not, SSA must then consider whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." 20 C.F.R. § 404.1520. If the claimant does have a severe impairment, SSA must determine whether this impairment is one listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, SSA will presume the claimant to be disabled. If the impairment is not listed as such, then SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work.[6] Lastly, if the claimant is unable to perform past relevant work, then the burden shifts to SSA to prove that the claimant is capable of performing "any other work." *See* 20 C.F.R. §§ 404.1520, 416.920; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

An ALJ is multi-tasked in this process, not only to correctly apply the law, but to ensure that the essential facts are gathered for review. That is why an "an ALJ has an affirmative duty to seek out information to fill any clear gaps in the administrative record, regardless of whether the claimant is represented by counsel." *Larkins v. Barnhart*, 87 F. App'x 193, 195 (2d Cir. 2004). Specifically, the ALJ "must develop [the claimant's] complete medical history" and make "every reasonable effort" to obtain medical reports from his medical sources in order to fill gaps in the administrative record. 20 C.F.R. § 416.912. When the evidence received from a treating physician is "inadequate" to determine whether a claimant is disabled, the ALJ must "first recontact [claimant's] treating physician . . . to determine whether the additional

---

[6] According to SSA, "residual functional capacity" is when an "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a); *see Schaal*, 134 F.3d at 501.

7

information . . . need[ed] is readily available." 20 C.F.R § 404.1512. A decision that rejects an application for disability insurance benefits without fully developing the administrative record commits clear legal error, and is subject to remand for further proceedings. *See Rosa*, 168 F.3d at 79-80 (reversing the ALJ's decision, which discredited a treating physician's report as conclusory, because medical records were incomplete); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Valerio v. Comm'r of Soc. Sec.*, 2009 WL 2424211 at *18n.44 (E.D.N.Y. 2009).

The standard set for administrative review was not met in this case. In articulating his decision to assign Di Pasqua's treating physicians less than controlling weight, the ALJ revealed a fatal shortcoming in meeting his obligation to fully develop the record. Tellingly, the ALJ explained, "[w]hile Dr. Bhernshteyn [*sic*] is a treating physician (however as per testimony only recently), the undersigned finds his statements to be rather conclusory based primarily on claimant's subjective complaints . . . and nowhere does he supply detailed physical findings upon his examination of the claimant." (R. 16.) But having identified the inadequacy of Dr. Bernshteyn's testimony, the ALJ was obligated to request the missing information he deemed necessary to properly assess the objectivity and clinical basis of Dr. Bernshteyn's medical opinion. *See Larkins*, 87 F. App'x at 195; *Rosa*, 168 F.3d at 79. The ALJ instead chose to assign a lesser weight to Dr. Bernshteyn's opinion. But, it was not enough merely to say that the three reports the physician had submitted were insufficient, or, without more, he found them "subjective," notwithstanding the presence of MRI studies, or conclusory, because there were gaps in the record of the findings used by Dr. Bernshteyn to support his conclusion. Without passing on whether there were sufficient findings by the treating physician to support his opinion, once the ALJ concluded there were gaps in Dr. Bernshteyn's testimony, he was required to re-contact Dr. Bernshteyn or otherwise fill the gaps. He never did. *Id.* In failing to follow up

with Di Pasqua's key treating physician, the ALJ committed clear legal error.[7]

The ALJ's failure to develop the record is not a mere technical defect, and the extent and nature of the missing information the ALJ did not pursue magnifies the impact of the error. As one of Dr. Bernshteyn's reports clearly reflected, and in direct contradiction to the ALJ's opinion, which characterized Dr. Bernshteyn and Di Pasqua's treatment relationship as spanning no more than six months, Di Pasqua sought treatment from Dr. Bernshteyn for at least three years. (R. 211.) Given the length of the doctor-patient relationship and the scant record of that relationship developed at the administrative hearing, it can hardly be said that the information about that treating relationship actually in the record represented an exhaustive account of the claimant's disability. *See Wagner v. Sec'y of Health Serv.*, 906 F.2d 856, 861 (2d Cir. 1990). Indeed, had the ALJ requested the three years of missing medical records, which other evidence in the record strongly suggested exist, instead of merely finding Dr. Bernshteyn's opinion conclusory, it is possible he would have found other "detailed physical findings" he thought were necessary but absent from the reports. (R.12.) "[A] treating physician's 'failure to include this type of support for the findings in his report does not mean that such support does not exist.'" *Rodriguez v. Astrue*, 2013 WL 1282363 at *15 (E.D.N.Y. Mar. 28, 2013) (*quoting Clark*, 143 F.3d at 118). Perhaps, as is likely here, that information is absent only establishes that the ALJ did not fulfill his obligation to seek it out.

In sum, the ALJ breached his affirmative duty to develop the medical record, and

---

[7] The ALJ's decision also neglected to mention Dr. Olivera's report entirely, when deciding that Di Pasqua did not have severe manic depression. Since the available record contains insufficient information to determine whether Dr. Olivera was a treating physician, this is not reversible error *per se*. The Court notes, however, that Di Pasqua listed him on Form SSA-3368 Section 4 (Information About Your Medical Records). (R. 100.) The Court, therefore, cannot fathom how, on rehearing, the ALJ could meet his duty to complete the record without seeking additional input from this treating source.

9

compounded his clear legal error by assigning less than controlling weight to the opinion of Di Pasqua's treating physician based on that incomplete record.

## Conclusion

For the foregoing reasons, the determination of the Commissioner to deny Di Pasqua SSI benefits is reversed and the matter remanded for further proceedings consistent with this Memorandum and Order.

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       July 7, 2012

                                        s/ ENV
                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge